**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No.   16-30073 |
| Plaintiff-Appellee, | D.C. No. 2:14-cr-00071-JLQ-1 |
| v. | |
| RICHARD C. SPRINGS, | MEMORANDUM[*] |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the Eastern District of Washington
Justin L. Quackenbush, District Judge, Presiding

Argued and Submitted April 7, 2017
Seattle, Washington

Before:  W. FLETCHER and GOULD, Circuit Judges, and BLOCK,[**] District Judge.

Defendant-Appellant Richard Springs is charged with violating 18 U.S.C.

§ 115(a)(1)(B), based on alleged threats to kill federal judges in the Western

District of Washington.  The district court concluded that Springs was incompetent

---

[*]    This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]    The Honorable Frederic Block, United States District Judge for the Eastern District of New York, sitting by designation.

to stand trial and ordered him hospitalized to attempt competency restoration. Because Springs refused treatment, the government moved for permission to involuntarily medicate him to render him competent to stand trial pursuant to *Sell v. United States*, 539 U.S. 166 (2003). The district court granted the motion, which Springs now appeals.

To obtain a forcible medication order under *Sell*, the government must prove all four *Sell* factors by clear and convincing evidence. *United States v. Ruiz-Gaxiola*, 623 F.3d 684, 692 (9th Cir. 2010). The first *Sell* factor—whether important governmental interests are at stake in prosecuting the defendant for the charged offense—is a legal question that we review de novo. *See id.* at 693. The remaining *Sell* factors—whether involuntary medication will significantly further the government's interest, whether involuntary medication is necessary to further those interests, and whether the recommended course of treatment is in the patient's best medical interest—we review for clear error. *See id.* We have jurisdiction under the collateral order exception to 28 U.S.C. § 1291. *See Sell*, 539 U.S. 176–77. We affirm.

1.    The district court did not err in determining "that important government interests are at stake" in prosecuting Springs. *Id.* at 180. Springs concedes that his alleged crime—threatening to kill federal judges—is serious, but

argues that special circumstances lessen that interest. The parties do not dispute that the applicable Sentencing Guidelines range is on the low end at 21–27 months, and Springs has already been in custody for nearly three years. Although Springs has been confined for a significant amount of time, and it is possible that he will be sentenced to time served, this fact "does not totally undermine[] the strength of the need for prosecution." *Id.* Spring's sentence, if he is convicted, is likely to include a period of supervised release, which "would help ensure that [Springs] does not return to making threats when released into the public." *United States v. Gillenwater*, 749 F.3d 1094, 1102 (9th Cir. 2014). Further, if Springs is convicted, there may be less likelihood that others would make unlawful threats against federal judges. *See United States v. Onuoha*, 820 F.3d 1049, 1056–57 (9th Cir. 2016) (concluding that important governmental interests were at stake in part because of the defendant's possible period of supervised release, the need for general deterrence of the serious crime at issue, and because the possibility of civil commitment was weak).

2.      The district court did not clearly err in finding that "involuntary medication will significantly further" the government's interest in prosecuting Springs. *Sell*, 539 U.S. at 181. The district court heard medical testimony that treating Springs with Abilify was substantially likely to render Springs competent

and "substantially unlikely to have side effects that will interfere significantly with [his] ability to assist counsel." *Id.* This testimony was supported by studies that described treating delusional disorder with antipsychotic medication, including Abilify or its generic equivalent. Springs did not provide expert testimony on his behalf or otherwise discredit the evidence offered by the government, which was thus uncontested. And Springs himself testified that he had previously taken Abilify and experienced some symptom abatement without serious side effects.

3. The district court did not clearly err in finding that "involuntary medication is necessary to further" the government's interest. *Id.* The district court had previously ordered that medical staff attempt psychotherapy, and the government's experts explained why talk therapy was ineffective in Springs's case. The district court also ordered less intrusive means for administering Abilify by first providing Springs the opportunity to take oral doses.

4. The district court did not clearly err in finding that the "administration of drugs is medically appropriate." *Id.* Several facts support this finding: Springs previously took Abilify and testified to experiencing improvement without serious side effects; the government's expert testified that Abilify had the mildest side effects of all antipsychotic drugs available to psychiatrists in the United States; and experts testified that medication would likely provide significant medical benefits

to Springs. Defense counsel also conceded that Abilify was an appropriate medication to treat delusional disorder. The district court properly considered Springs's "long-term medical interests . . . rather than the short-term institutional interests of the justice system" in concluding that the government met this fourth factor. *Ruiz-Gaxiola*, 623 F.3d at 703.

5.     The district court was not required to make a separate finding of dangerousness. *See Sell*, 539 U.S. at 183. The government previously sought permission to forcibly medicate Springs pursuant to *Washington v. Harper*, which permits involuntary medication of a defendant if his mental illness renders him dangerous to himself or to others and if the treatment is in his best medical interest. 494 U.S. 210, 227 (1990). After an administrative panel determined that Springs could not be involuntarily medicated under *Harper*, the government then sought permission under *Sell*.

\* \* \*

*Sell* orders to involuntarily medicate a defendant for the purpose of restoring competency to stand trial are disfavored in light of the liberty interests at stake and should occur "only in rare circumstances." *Ruiz-Gaxiola*, 623 F.3d at 687; *see Sell*, 539 U.S. at 180. But based on the importance of the government's interest in prosecuting this case, the evidentiary record presented, and the district court's

extensive and thoughtful fact-finding, we conclude that this is one of those rare

circumstances.  We affirm the district court's *Sell* order.

**AFFIRMED.**